UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    Plaintiff,<br><br>V.<br><br>KATHARINE E. MATTHEWS,<br>    Defendant. | CRIMINAL NO. 5:17-118-KKC<br><br><br>**OPINION AND ORDER** |

\*\*\* \*\*\* \*\*\*

Defendant Katharine E. Matthews was indicted along with six co-defendants on one count of conspiring to distribute cocaine and methamphetamine (Count 1), one count of conspiring to distribute marijuana (Count 2), and one count of conspiring to launder money (Count 3). (DE 78, Superseding Indictment.) Co-defendant Robert Earl Wallace entered into a plea agreement. The government dismissed the charges against co-defendant Kendra Tally. (DE 469, Order.) Co-defendant David Arthur Corona Diaz has never appeared in court. The remaining three co-defendants (Robert Chipperfield Jr., Torrey Ward, and Nader Sarkosh) went to trial along with Matthews.

The trial commenced on February 24, 2020 and lasted for a little more than 7 weeks. On April 14, 2020, the jury began deliberations (DE 579, Minute Entry). On April 23, 2020, the jury returned a verdict finding Matthews guilty of all three counts in the indictment and acquitting her three co-defendants of all charges. As to quantities, with regard to Count 1, the jury found Matthews guilty of distributing five kilograms or more of cocaine. With regard to Count 2, the

jury found Matthews guilty of distributing more than 100 but less than 1000 kilograms of marijuana.

Matthews now moves for a new trial (DE 638) and for a judgment of acquittal (DE 637).

## I.   Motion for Judgment of Acquittal

As to her motion for judgment of acquittal, Matthews has a "very heavy burden." *United States v. Vichitvongsa*, 819 F.3d 260, 270 (6th Cir. 2016). In reviewing a claim of insufficient evidence, the question is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Jackson v. Virginia,* 443 U.S. 307, 319 (1979)). Importantly, the Court must "draw all available inferences and resolve all issues of credibility in favor of the jury's verdict." *United States v. Maliszewski,* 161 F.3d 992, 1006 (6th Cir. 1998). The Court will "reverse a judgment for insufficient evidence only if the judgment is not supported by substantial and competent evidence upon the record as a whole." *Vichitvongsa*, 819 F.3d at 270 (quoting *United States v. Stewart*, 729 F.3d 517, 526 (6th Cir. 2013)). "'Substantial evidence' is 'such relevant evidence as a reasonable mind might accept to support a conclusion. It is evidence affording a substantial basis of fact from which the fact in issue can be reasonably inferred.'" *Id*. (quoting *United States v. Taylor*, 800 F.3d 701, 711 (6th Cir. 2015)).

The Court will begin with the marijuana conspiracy charged in Count 2. Matthews argues that the government presented no evidence to establish that the Eastern District of Kentucky was the proper venue for this charge. "The United States must prove by a preponderance of the evidence that venue was proper as to each count." *United States v. Crozier*, 259 F.3d 503, 519 (6th Cir. 2001). "For drug conspiracies, venue is proper in any district where the conspiracy was formed or where an overt act in furtherance of the conspiracy was performed." *Id*.

The government concedes that it did not present any evidence that the marijuana conspiracy was formed in this district or that any overt act in furtherance of the conspiracy was performed here. (DE 640, Response at 2.) It argues, however, that Matthews has waived any objection to venue by 1) expressly acknowledging the Eastern District of Kentucky was proper venue in a pre-trial motion to change the venue and 2) by not affirmatively challenging venue prior to trial.

The government uses the term "waiver" in arguing that Matthews can no longer assert an objection to venue on the marijuana conspiracy. (DE 640, Response at 2, 14, 15, 16, 17). "[W]aiver is the intentional relinquishment or abandonment of a known right." *United States v. Petlechkov*, 922 F.3d 762, 767 (6th Cir. 2019) (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)). It is not clear that a defendant's right to be tried in the proper venue can be waived by the defendant's counsel as opposed to by the defendant herself. *See id.* at 768. The Court need not decide that issue, however, because neither Matthews nor her counsel intentionally relinquished or abandoned her right to proper venue.

The government argues that Matthews "expressly" waived any challenge to venue in a pretrial motion to change venue. The motion at issue was not filed by Matthews' counsel. It was filed by counsel for codefendants Sarkosh and Tally. (DE 136, Motion.) Matthews did join in the motion (DE 142, Motion.) But, even if any statement in the motion could be deemed to be an intentional relinquishment or abandonment of Matthews' right to proper venue, there is no such statement in the motion.

The government points to two statements by counsel for Sarkosh and Tally in the motion to change venue by which Matthews allegedly expressly waived her right to proper venue. (DE 640, Response at 16.) First, counsel stated that the government's assertion that Carlson landed a plane in Kentucky in April 2017 "establishes the venue for this prosecution." Second, in the

3

reply brief on the motion to change venue, counsel clarified that the motion did not argue that "the EDKY is an improper venue under Rule 18, but rather that it is an inconvenient venue under Rule 21(b)."

These statements cannot be construed as an intentional relinquishment of Matthews' right to proper venue. They merely recognize that venue would be proper in this district for the marijuana conspiracy, assuming that the government produced evidence at trial that Carlson landed a plane here on April 21, 2017 as part of that conspiracy.

The government also argues that Matthews waived her right to object to venue by failing to raise an objection prior to trial. Pursuant to *Petlechkov*, this is more properly framed as an argument that Matthews forfeited her right to object to venue. This is because "'forfeiture is the failure to make the timely assertion of a right,' while 'waiver is the intentional relinquishment or abandonment of a known right.'" *Id*. (quoting *Olano*, 507 U.S. at 733.

It is true that "typically venue objections are forfeited if not raised *before* trial." *Petlechkov*, 922 F.3d at 768 (citing Fed. R. Crim. P. 12(b)(3)(A)(i)). "But there is an exception to this general rule. Defendants are only required to raise venue objections before trial if they have notice of the alleged venue defect." *Id*. Such notice can come from the face of the indictment or any other means. *Id*. (quoting *United States v. Grenoble*, 413 F.3d 569, 573 (6th Cir. 2005)). Where a defendant does not have notice of a venue defect prior to trial, however, she "can presume that the government will offer evidence at trial proving that venue is proper." *Id*. If the government fails to do so, "then the defendant is free to raise the objection." *Id*.

Here, the defect in venue was not apparent from the face of the indictment. The indictment alleged that Matthews committed the marijuana conspiracy offense in the Eastern District of Kentucky. As to whether Matthews had notice before trial of the defect in venue by some means

other than the indictment, the government argues that Matthews knew that the government would produce no evidence that the marijuana conspiracy would "involve any marijuana flights to or from the Eastern District of Kentucky." (DE 640, Response at 18.) But, even if Matthews knew that the government had no evidence of flights into or out of the Eastern District of Kentucky in furtherance of the marijuana conspiracy, that does not mean she knew before trial that the government could not establish venue in this district on that charge.

As the government recognizes in a footnote, on a drug conspiracy charge, venue can also be established with evidence that the marijuana conspiracy involved flights *over* the district. (DE 640, Response at 21 n.11.) *See United States v. Ramirez-Amaya*, 812 F.2d 813, 816 (2d Cir. 1987); *United States v. Williams*, 536 F.2d 810, 812 (9th Cir. 1976); *United States v. Duque*, 123 F. App'x 447, 449 (2d Cir. 2005). The government does not allege that Matthews knew before trial that the government could not produce evidence that the flights carrying marijuana flew over the Eastern District of Kentucky. To the contrary, the government suggests that such evidence did exist. It complains that, had Matthews challenged venue before trial, it would have been able to "further develop" that evidence. Matthews was free to presume that the government would produce this evidence at trial. *Petlechkov*, 922 F.3d at 768. When the government failed to do so, Matthews properly raised the objection to venue after trial. *Id*.

The United States concedes that it did not produce sufficient evidence that the Eastern District of Kentucky was the proper venue for the marijuana conspiracy. Accordingly, Count 2 of the indictment must be dismissed. Pursuant to *Petlechkov*, the Court will dismiss the claim without prejudice. *Id*. at 771.

As to the cocaine conspiracy charged in Count 1, Matthews argues the government presented insufficient evidence that she had knowledge of and intended to join the drug conspiracy. The

conspiracy was led by Robert Carlson, who testified against Matthews at trial. Carlson pleaded guilty in a separate case to conspiring to distribute cocaine. *United States v. Robert Carlson*, No. 5:17-56 (filed April 23, 2017).

The evidence of Matthews' knowledge of the cocaine conspiracy and intent to join it was overwhelming. Carlson was arrested after flying into Lexington on a private jet which contained 80 kilograms of cocaine. Carlson testified that he had trafficked in "thousands of kilos of cocaine" and that Matthews was involved from the beginning. Carlson testified that he moved between 500 million and a billion dollars in cash during his drug-trafficking activity, which occurred predominately in 2016 and 2017. He testified that he spent millions of dollars in expenses during this time.

According to Carlson, Matthews used her mother's American Express card to pay $25,000 to $30,000 to finance the first drug-trafficking flight, which contained marijuana. He testified that Matthews helped pack the marijuana in suitcases and load it on the plane destined for Louisville. She was also on the flight to Louisville with the marijuana and on the flight back to California with the cash the crew received in return. Carlson testified a portion of this money was paid to the marijuana supplier and a portion of it went to Matthews.

As to the cocaine trafficking, Carlson testified that the logistics followed largely the same pattern as the marijuana flight. He testified that Matthews assisted in packing the cocaine into suitcases, which were then loaded on a private plane. Carlson testified that the co-conspirators delivered cocaine via private plane to various cities in the eastern United States. They then returned to California on private planes with the cash they received in return for the drugs.

Carlson testified that either he, Matthews or an individual named Isaac Basilio Rosas delivered the cocaine. For the flights he was not on, he paid Matthews or Rosas to deliver the

6

cocaine via private planes from California and to return with the cash. He testified that, on average, the planes carried between 80 and 120 kilograms of cocaine. Carlson testified that, for the flights she was on, Matthews was responsible for taking inventory of the cocaine to be delivered and of documenting the cash she received in return. He testified that, after delivering the cocaine, Matthews would receive cash in bundles and that she would document the transaction by taking pictures of the bundles. Carlson estimated that each bundle contained $30,000 to $40,000. Carlson testified that, after arriving back in California, Matthews would wait at a hotel with the cash until one of Carlson's drug suppliers from Mexico retrieved it.

Carlson testified that Mexican drug suppliers paid him $1,500 for every kilogram of cocaine he delivered, and he paid expenses for the trip out of that. Expenses included payment to those who assisted in the drug-trafficking activity, hotels, and airplane fuel. Carlson testified that he typically paid Matthews $5,000 for a delivery.

The evidence showed that, between May 2016 and April 2017, Carlson arranged the delivery of about 1,680 kilograms of cocaine.

As set forth in the government's response to Matthews' motion, multiple text messages between Carlson and Matthews corroborated Carlson's account of Matthews' role in the drug-trafficking activity. In a text conversation between Carlson and Matthews regarding a February 2017 trip to Miami, Matthews tells Carlson that a "money bag has 11 bundles." Matthews sent Carlson a picture of her sitting next to the bundles of cash. Carlson tells Matthews that she is supposed to collect $38,500 for him. The two discuss that two "chickens" are missing. Carlson testified that they used the term "chickens" to refer to cocaine. Carlson tells Matthews that scares him because he cannot be "on the hook for two chickens."

Further, Cedric Fajardo testified that, at the airport prior to one trip to Atlanta, Georgia, Matthews helped count the kilos of cocaine being transported. He testified that, upon arriving in Atlanta, he and Matthews handed off suitcases filled with cocaine and, in return, picked up suitcases containing bundles of cash.

The evidence was certainly sufficient to convince a rational trier of fact that Matthews knew of the conspiracy to transport cocaine and voluntarily joined it.

As to the conspiracy to commit money laundering alleged in Count 3 of the indictment, the Court instructed the jury that, to find a defendant guilty of this charge, it must find beyond a reasonable doubt that Matthews agreed to commit the crime of money laundering and that she knowingly and voluntarily joined the money laundering conspiracy.

The Court instructed the jury that it must also find beyond a reasonable doubt the following: 1) the defendant conducted or attempted to conduct a financial transaction; 2) the financial transaction involved property that represented the proceeds of the distribution of controlled substances; 3) the defendant knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity; and 4) the defendant either a) intended to promote the carrying on of the unlawful activity; or b) knew the transaction was at least partially designed to disguise the source of the proceeds.

As discussed, there was sufficient evidence for a juror to conclude that Matthews agreed with Carlson to engage in financial transactions that she knew involved money derived from drug trafficking. This included evidence that Matthews agreed to fly multiple times to deliver cocaine across the country and to return to California with bundles of cash.

There was also evidence from which a rational juror could conclude that Matthews engaged in these financial transactions with the intent to promote the carrying on of the drug-trafficking

activity. Matthews herself received bundles of cash for drugs she helped deliver. Carlson testified that he used the money obtained from the drug-trafficking transactions to pay other members of the conspiracy and to pay for expenses associated with the activity. The evidence showed that Matthews herself gave bundles of cash to Carlson's drug suppliers in return for the drugs. This allowed Carlson to obtain more drugs from the suppliers. Finally, the evidence showed that Carlson used the funds to pay hotel rooms and other expenses associated with the drug-trafficking activity.

Likewise, there was evidence from which a rational juror could conclude that Matthews knew that the financial transactions that she engaged in were designed to conceal the source of the money. The evidence established that Matthews always obtained cash in return for the cocaine that she delivered. Further, the evidence also established that expenses of the drug-trafficking activity, including hotels and airplane fuel, were paid with cash. Finally, Carlson paid Matthews herself in cash.

Matthews argues that she is entitled to acquittal on Count 1 of the indictment because there was a "material variance" between the proof offered at trial and the crime charged in the indictment. A variance occurs when, there is no change in the charges of the indictment, "but the evidence at trial proves facts materially different from those alleged in the indictment." *United States v. Kuehne*, 547 F.3d 667, 683 (6th Cir. 2008) (citation omitted). To be entitled to an acquittal because of a variance between the indictment and the evidence produced at trial, a defendant must establish: (1) the variance and (2) "that the variance affected a substantial right of the defendant." *Id.*

Matthews argues that Count 1 charged her with conspiring to distribute both cocaine *and* methamphetamine but that the Court instructed the jury that the government did not have to

9

prove the defendants committed both crimes. The Court instructed the jury that the government must prove that two or more persons conspired to distribute "cocaine *and/or* methamphetamine."

Matthews recognizes that this instruction was correct under Sixth Circuit case law. *See United States v. Hathaway*, 798 F.2d 902, 913 (6th Cir. 1986) ("Thus, we hold that an impermissible variance does not occur when, although an indictment charges several acts in the conjunctive, the district court charges the jury in the disjunctive.") She argues that this precedent should be overturned. This Court cannot do that. It is bound by the rulings of the Sixth Circuit.

## II.     Motion for New Trial

Under Rule 33(a), the Court may set aside the verdict and grant a new trial if the "interest of justice" requires that. "A new trial may be granted under Rule 33 if the extraordinary circumstance arises that the evidence preponderates heavily against the verdict." *United States v. Ray*, 597 F. App'x 832, 840 (6th Cir. 2015). "The district judge may weigh the evidence and assess the credibility of witnesses in the role of a thirteenth juror." *Id*. "Motions for a new trial are not favored and are granted only with great caution." *United States v. Fritts*, 557 F. App'x 476, 479 (6th Cir. 2014) (quoting *United States v. Garner*, 529 F.2d 962, 969 (6th Cir.1976)). The defendant "bears the burden of proving that a new trial should be granted." *Id*. (quoting *United States v. Davis*, 15 F.3d 526, 531 (6th Cir.1994)).

Matthews argues that the Court should discount the testimony of Carlson and Fajardo. As discussed, however, their testimony is sufficiently corroborated by multiple text messages between Matthews and Carlson.

Matthews also argues there was insufficient evidence to convict her of any count in the indictment. The Court has addressed the sufficiency of the evidence in its ruling on Matthews' motion for judgment of acquittal.

10

### III. Conclusion

For all these reasons, the Court hereby ORDERS as follows:

1) Matthews' motion for judgment of acquittal (DE 637) is GRANTED to the extent that she asks the Court to dismiss Count 2 of the indictment without prejudice. The motion is otherwise DENIED;

2) Count 2 of the indictment is DISMISSED without prejudice; and

3) Matthews' motion for new trial (DE 638) is DENIED.

This 1st day of October, 2020.

KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY